NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| M.K., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendants. | Civil No. 20-0934 (RBK) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff M.K.'s Appeal (Doc. No. 1) from the final decision of the Commissioner of the Social Security Administration denying her application for Social Security Disability benefits. For the reasons set forth below the Commissioner's decision is **VACATED** and **REMANDED.**

**I.     BACKGROUND**

**A.  Procedural Background**

On December 21, 2015, Plaintiff filed an application for Disability Insurance Benefits alleging her disability—cervical and lumbar spine impairments—began on August 6, 2014, as a result of a motor vehicle accident. (Doc. No. 4-3, R. at 18). Her claim was initially denied on April 26, 2016, and again upon reconsideration on August 31, 2016. (*Id.*). On October 31, 2016, Plaintiff requested a hearing before an Administrative Law Judge. (*Id.*). At the hearing, which was held on November 2, 2018, Plaintiff requested a closed period of disability from August 6, 2014 to October 24, 2017 because she returned to gainful employment on October 25, 2017. (R.

1

at 19). At the hearing, a vocational expert ("VE") testified, and the ALJ issued an unfavorable decision on December 1, 2018. (*Id.* at 52). Plaintiff requested a review of the ALJ's decision by the Appeals Council, which was denied in December of 2019. (*Id.* at 1–3). Thereafter, Plaintiff filed this action for judicial review. (Doc. No. 1).

## II.  LEGAL STANDARD

### A.  Sequential Evaluation Process

In order to receive benefits under the Social Security Act ("SSA"), the claimant must be disabled within the meaning of the Act. The Commissioner applies a five-step evaluation process to make this determination. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that he cannot perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1520(e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform

based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final

3

determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.   FACTUAL BACKGROUND

### A.  Plaintiff's History

Plaintiff was born May 28, 1974 and is currently 47 years old. (R. at 118). She graduated high school and has received certificates for post-high school courses in accounting and accelerated office automation. (R. at 91). She was previously employed as a controller for fast food restaurants and in an administrative/sales role for a government contractor. (R. at 271). She lives at home with her two children and husband.

In March of 2014, Plaintiff was rear ended by a Ford F150 which resulted in lumbar and cervical impairments. (R. at 89). Although she attempted to work following her accident, her pain was too great (R. at 96). Doctors prescribed Plaintiff narcotic pain medication, such as oxycodone and Percocet, after the accident, but they never completely allayed the pain. (R. at 97). Plaintiff also received epidurals and facet injections for the pain but neither procedure was entirely successful. (R. at 99). Plaintiff testified that the combination of medications impacted her ability to function: "[e]verything makes you tired. Everything makes you dizzy. Everything kind of makes you loopy." (R. at 97). Because of the medications impact, her mother would often come to the house to help with the children. (R. at 98).

In August of 2015, Plaintiff underwent cervical spine surgery. (R. at 99). She received a "three level fusion and discectomy" which resulted in "four screws and a plate" being implanted in her cervical spine. (R. at 99). Following surgery, she had to wear a bone growth stimulator for four hours a day for eight weeks and was restricted in her movements. (R. at 105–106). In total recovery took approximately one year. (R. at 106).

Plaintiff has four levels at issue in her lumbar spine: the L2-3, L3-4, L4-5, and L5-S1. (R. at 100, 498). She had three discograms to determine if surgery was possible but was advised against it. (R. at 103). She has also received facet injections and branch blocks for her lumbar spine issues, but these procedures were also unsuccessful in abating the pain. (R. at 103).

Prior to returning to work in October of 2017, Plaintiff's medications were adjusted so she could function. (R. at 102). She continues to have lumbar pain. (R. at 102–103).

### B. Relevant Medical History

#### i. Medical Evidence Relevant to Lumbar Degenerative Disc Disease

Following the motor vehicle collision, an April 2014 MRI of Plaintiff's lumbar spine revealed a central annular tear at L3-4, and a central annular tear with superimposed shallow central protrusion. (R. at 503). In May of 2014, an EMG revealed acute bilateral L5 radiculopathy. (R. at 503). Likewise, an October 2014 MRI of Plaintiff's lumbar spine showed a small grade 5 annular tear at L3-4, two tears at L4-5—one grade 4 and the other grade 5—and a grade 5 annular tear at L5-S1. (R. at 525). A discogram performed on the same day revealed concordant pain at L3-4, L4-5, and L5-S1. (R. at 523).

In October of 2015, Plaintiff underwent another MRI, which revealed an annular disc bulge at L2-3 effacing the thecal sac; an annular disc bulge at L3-4 with central annular tear effacing the thecal sac; an annular disc bulge at L4-5 effecting the thecal sac with mild narrowing of the foramina and mild endplate spondylosis; and an annular disc bulge at L5-S1 with a central annular tear and a shallow central protrusion. (R. at 586).

Two years later, an October 2017 imaging study showed a minimal diffuse disc bulge at L3-4 and a tiny broad-based disc protrusion as well as ligamentum and facet hypertrophy causing minimal central canal stenosis; a mild diffuse disc bulge at L4-5 and small broad based left

paracentral disc protrusion; and a mild diffuse disc bulge at L5-S1 and mild to moderate left paracentral disc herniation as well as facet hypertrophy. (R. at 1444). The herniation came in close contact with the left S1 nerve root. (R. at 1444).

### ii. Medical Evidence Relevant to Cervical Degenerative Disc Disease

After Plaintiff's motor vehicle accident, an April 2014 imaging study of her cervical spine revealed mild disc space narrowing with left uncovertebral hypertrophy, annular disc bulging effacing the thecal sac and mild foraminal narrowing bilaterally at C3-4. (R. at 587). At C4-5, C5-6, and C6-7, the imaging study showed similar findings: mild disc space narrowing with mild endplate spondylosis and an annular disc bulge with moderate right foraminal stenosis. (R. at 587). A month later an EMG and nerve conduction study was performed and revealed acute C6-7 and right C5-6 radiculopathy. (R. at 503). Throughout 2014, Plaintiff underwent a series of cervical interlaminar epidural steroid injections. (R. at 519).

In March of 2015, Plaintiff was examined by Dr. Kalliny who reported that Plaintiff's Spurling's test was positive, she exhibited extensive tenderness in the cervical spine with a reduced range of motion and had diminished sensation in the upper extremities. (R. at 760). A few months later, in August of 2015, Plaintiff underwent anterior cervical discectomy and fusion between C4 and C7 which resulted in four screws and a plate being implanted in her cervical spine. (R. at 583).

In July of 2017, Dr. Kalliny examined Plaintiff and reported that her cervical range of motion was 85% of normal, she exhibited tenderness at C5-7, and diminished sensation to the medial aspect of both forearms. (R. at 1324). Plaintiff was involved in another motor vehicle accident in January of 2018 and reported that pain in her cervical spine has increased. A subsequent imaging study revealed degenerative disc disease at C3-4. (R. at 1265).

### C. The ALJ's Decision

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since the fourth quarter of 2017. (R. at 21). However, because there was a continuous 12-month period where Plaintiff did not engage in substantial gainful activity, the ALJ proceeded to step two to determine whether Plaintiff was disabled during that time period. (*Id.*). At step two, the ALJ found Plaintiff to have the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, anxiety disorder, panic disorder, and affective disorder. (*Id.*).

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of a list impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 23). For Listing 1.04A, the ALJ found that the medical record as a whole did not support a finding that the claimant's back impairment met the requirements because there was no evidence of a positive straight leg raise test at both the sitting and supine positions. (*Id.*). For Listing 1.04B, the ALJ concluded that any evidence of spinal arachnoiditis remains absent from the medical record. (*Id.*). Lastly, for Listing 1.04C, the ALJ found there was no evidence of ineffective ambulation because the claimant did not require a walker, two crutches, or two canes to ambulate. (*Id.* at 24).

The ALJ then constructed Plaintiff's residual functional capacity, finding that she was able to perform:

> sedentary work as defined in 20 C.F.R. 404.1567(a) except that she can occasionally climb ramps and stairs, occasionally climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl, bilateral upper extremity frequent reaching front and side, occasional overhead reaching, bilateral upper extremity frequent fingering and handling. She can perform simple repetitive tasks, make simple decisions in the workplace, carry out simple instructions, frequently maintains contact with supervisors and occasional contact with co-workers and the public. She requires 10 percent time off task in addition to breaks (15 minutes in the morning and afternoon each, 30 minutes for lunch) and 2 days unscheduled absence per month.

(*Id.* at 27). Because of the Plaintiff's RFC, the ALJ concluded at step four that she was unable to return to his past work as a controller and administrative assistant. (*Id.* at 50). Finally, at step five, the ALJ determined, based on the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 51). Specifically, ALJ found that Plaintiff could perform the job of table worker, addresser, or lens inserter. (*Id.*). Ultimately, the ALJ found Plaintiff not disabled. (*Id.* at 51).

## IV.   DISCUSSION

### A. ALJ's Step Three Analysis

Plaintiff argues the ALJ erred when she was not deemed disabled at step three of the sequential step analysis. Specifically, she contends that she is disabled according to Listing 1.04(A), which provides the criteria for a finding of a disability based on:

> compromise of a nerve root (including the cauda equina) or the spinal cord, with (1) [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, or (2) if there is involvement of the lower back, [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and a positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). The ALJ found, "[t]he medical record as a whole does not support a finding that the claimant's back impairment meets the requirements of 1.04A as the medical record does not reveal a positive straight leg raise test at both sitting and supine positions."

Plaintiff contends the ALJ's decision on this issue is faulty in two ways. First, Plaintiff argues the ALJ did not provide a sufficient rationale for his decision because he concluded there was no evidence of a positive straight leg test in the sitting and supine positions even though the record demonstrates that Plaintiff had several positive straight leg tests. Second, Plaintiff argues

8

that her cervical spine impairment independently meets the Listing and does not require a showing of a positive straight leg test.

Defendant counters that even though the record contains a positive straight leg test, it is not clear whether the positive result was for the sitting and supine positions, both of which are required under the Listing when lower back impairments are involved. Defendant makes no mention of the issue relating to the cervical spine impairment.

We agree with Plaintiff that the ALJ erred. Listing 1.04A provides criteria for finding a disability based on "compromise of a nerve root (including the cauda equina) or the spinal cord," with (1) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," or (2) "if there is involvement of the lower back," "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," "and a positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. A claimant may be deemed disabled under this Listing if she suffers from an impairment of her nerve root or the spinal cord in the cervical area, lumbar area, or both. *Swanson v. Comm'r of Soc. Sec.*, No. 1:15-CV-08894-NLH, 2017 WL 825199, at *7 (D.N.J. Mar. 2, 2017). So long as the claimant demonstrates the required elements, nothing in this Listing precludes a determination of disability based on one area of spinal cord, even if another area is also impaired. *Id.* In other words, even though a claimant may suffer from cervical and lumbar spine impairments, if the cervical spine impairment by itself meets the elements of the Listing, that claimant may be deemed disabled. *See, e.g., Bilak v. Colvin*, 73 F. Supp. 3d 481, 486 (D.N.J. 2014) (in

9

determining that the defendant's position was not substantially justified under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), to warrant the reduction of attorney's fees awarded to the plaintiff, the court finding that even though the ALJ properly discussed medical support showing that Plaintiff did not have "1) the required neuro-anatomic distribution of pain, 2) limitation of motion in the spine, 3) motor loss accompanied by sensory or reflex loss, and/or 4) positive straight leg raising as required to meet the other criteria of listing 1.04A," "the ALJ was also required to satisfy step three by 1) explaining the particular requirements of Listing 1.04(a) and applying them to the lumbar and cervical spinal impairments separately, and 2) evaluating the combined effects of both the lumbar and cervical spinal impairments to determine whether they are cumulatively equal to a listed impairment." (citing *Burnett v. Comm'r of SSA*, 220 F.3d 112, 119–120 (3d Cir. 2000)).

      The ALJ erred by seeming to only consider Plaintiff's cervical spine impairment and lumbar spine impairment as a single impairment. Putting aside the issue of whether the medical evidence shows a positive straight leg test in both the sitting and supine positions that would support a finding of disability based on Plaintiff's lumbar spine impairment, the ALJ did not provide any analysis as to whether Plaintiff's cervical spine impairment met the Listing by itself.

      The record shows that in August of 2015, Plaintiff received an anterior cervical discectomy and fusion involving C4–7. (R. at 36). Plaintiff has a limited range of motion with her neck and has no further options for surgery. (R. at 107, 105). In his analysis of Plaintiff's residual functional capacity, the ALJ detailed Plaintiff's medical records for her cervical spine impairment. (R. at 34–38). Because a district court is not empowered to weigh the evidence or substitute its conclusions for those of the fact-finder, *Williams v. Sullivan*, 970 F.2d 1178, 1182

(3d Cir. 1992), whether these records support or refute a finding of disability under Listing 1.04A is not a task this Court may undertake.

The Third Circuit has repeatedly stated that an ALJ must set forth the reasons for his decision, and an ALJ's bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient. *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119–20)). The ALJ in this case failed in that regard. It is for the ALJ to articulate why Plaintiff meets or does not meet the criteria of Listing 1.04A, and therefore, the matter must be remanded for further consideration so that the ALJ can do so. *See, e.g., Tursky v. Colvin*, 2015 WL 4064707, at *18–19 (D.N.J. 2015) (reversing and remanding the ALJ's decision because beyond one conclusory statement finding that the plaintiff's impairments did not meet or equal listing 1.04, the ALJ failed to explain or discuss the requirements in listing 1.04).

### B. Remaining Arguments in the Sequential Process

Finally, Plaintiff advances a series of arguments relating to the ALJ's RFC determination and whether the Commissioner erred at step five by relying on the vocational expert's testimony that Plaintiff could be absent from work two days a month because no employer would accept such tardiness. Because remand is warranted at step three, the Court need not and does not reach these additional arguments. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 Fed. App'x. 155, 156–57 (3d Cir.2008) (noting "[i]nasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach [plaintiff's] other challenges to the ALJ's decision."); *see also Lippincott v. Comm'r of Soc. Sec.,* 982 F. Supp. 2d 358, 374 (D.N.J. 2013). On remand, the ALJ must fully develop the record and explain his findings at step three. If it is

necessary to reach step four or five—which it may be—the ALJ must fully develop the record and explain those findings, including findings as to all pertinent medical evidence. If the ALJ rejects particular evidence, the ALJ must explain why.

## V.     CONCLUSION

For the foregoing reasons, the ALJ's determination that Plaintiff was not disabled between August 6, 2014 and October 24, 2017 is **VACATED** and this matter is **REMANDED** for further development of the record.


Dated: 3/29/2021                                             s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge